UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) DR. FRED BLYTHE and<br>2) RUTH BLYTHE,<br><br>   Plaintiffs,<br><br>v.<br><br>1) ESSENTIA INSURANCE COMPANY,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 13-CV-160-JED-PJC<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Before the Court are plaintiff's Motion for Partial Summary Judgment and Brief in Support (Doc. 20) and defendant Essentia Insurance Company's Motion for Summary Judgment, and Brief in Support (Doc. 25). Plaintiffs seek summary judgment with respect to a single legal issue – whether the defendant's defense should be limited to its reliance on information contained within its claims file at the time of its denial of the claim at issue. Defendant seeks summary judgment as to plaintiff's breach of contract claim, bad faith claim, and request for punitive damages. For reasons stated below, the Court finds that both motions for summary judgment should be denied in their entirety.

**Background**

Plaintiffs, Dr. Fred Blythe and Ruth Blythe, own a 1965 Chris Craft Constellation, which is a 46 foot wooden boat. On October 24, 2012, the boat sank while moored in a slip at the Willow Park Marina on the Grand Lake o' the Cherokees. The Blythes' boat was insured by Essentia Insurance Company ("Essentia") under a policy which set an agreed-upon value for the boat at $61,000. The Blythes' policy was obtained through Hagerty Classic Marine Insurance Agency ("Hagerty"). The policy provided loss coverage for "accidental, direct physical loss or

damages to [the boat] except as specifically excluded in this policy." (Doc. 25-2, at 3). Among the policy's exclusions are those for loss or damage "caused by or resulting from" "neglect;" "wear and tear;" "gradual deterioration;" and "weathering". (*Id.*).

When the policy was obtained in 2006, Hagerty required an out-of-water survey which revealed that the "hull appear[ed] solid with some repairable small areas of wood deterioration aft transom hull topside." (Doc. 25-1, at 40-42). Some minor repairs were recommended and the boat was insured. When the coverage was renewed in 2011, a second out-of-water survey stated: "Current bottom condition appears good. Well planked and caulked. No evidence of damage, abuse or wood deterioration observed…." (Doc. 28-1). As with the 2006 survey, some small areas of wood deterioration were noted on above-the-water areas of the boat.

When the boat sank on October 24, 2012, Dr. Blythe reported the loss and Hagerty contacted Dr. Blythe so that he could provide a recorded statement. During his statement, Dr. Blythe was told that the loss may not be covered and that a survey would be performed to determine whether the loss would be covered. Dr. Blythe was not asked during his statement about maintenance on the boat or its condition, other than whether it was hooked up to shore power at the marina. Dr. Blythe informed the adjuster, Brian Sarland, that the boat indeed had been hooked up to shore power for the purpose of powering the bilge pump. At the conclusion of his conversation with Dr. Blythe, Sarland caused to be mailed a reservation of rights letter to the Blythes and contacted Davis & Company, Ltd. for purpose of obtaining a survey of the boat.

Kenneth Pohlmann, a survey associate, was sent to inspect the boat. The crew at the marina had raised the boat from the water and had "pickled" the engines prior to Pohlmann's

inspection.[1]  Pohlmann physically inspected the boat on site without the Blythes present. Pohlmann did not review maintenance records for the boat or otherwise inquire about the boat's maintenance.  In his report, Pohlmann reached the following conclusions:

> The damage is consistent with sinking.  Lost power to the vessel and bilge pumps caused accumulating water in the bilge area from age deterioration of the hull. We found no visible impact damage to the exterior of the hull which may have caused the vessel to sink.  Mr. Blythe reported the vessel did accumulate water in the bilge area on a regular basis.

(Doc. 25-5, at 2).[2]  Notably, despite finding that the bilge pump had lost power and knowing that the vessel had been connected to shore power, Pohlmann never inquired of the marina regarding a power outage.  Nor did Pohlmann conduct any testing of the boat's electrical system, stating only that it "looked operational and functional."  (Doc. 28-2, at 86).

On December 2, 2012, Hagerty denied coverage of the loss of the boat, stating the following as justification:

> We assigned and [sic] independent surveyor to inspect your vessel.  The surveyor found no signs of impact to the boat.  You reported to the surveyor that the boat did accumulate water in the bilge on a regular basis.  The surveyor found that the hull showed signs of deterioration and rot due to age.  The surveyor located a large hole on the starboard aft corner and rot near the swim platform.  This damage is consistent with age and deterioration of the hull planks.
>
> \*     \*     \*
>
> Inasmuch as the damage to your boat is a result of gradual deterioration, the exclusion set forth above effectively preclude [sic] coverage for this matter[.]

(Doc. 25-7).

---

[1]  Engine "pickling" is a process by which the engines on a previously sunken vessel are removed, drained, and preserved to prevent corrosion and thus preserve their salvage value.

[2]  The Court notes that, despite Pohlmann's use of the plural "pumps", it appears elsewhere in his report that there was only a single Rule 1800 110-volt pump in the bilge area of the vessel. (Doc. 25-5, at 2).

On March 6, 2013, the Blythes filed this lawsuit, alleging bad faith breach of an insurance contract. On March 18, 2013, Essentia removed the case to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Essentia now seeks summary judgment with respect to three issues: whether the loss of the Blythes' boat is covered under the policy; whether the undisputed facts show that Essentia acted in good faith; and whether there is sufficient evidence to support the Blythes' request for punitive damages. The Blythes have also filed a motion for partial summary judgment, which seeks a determination that Essentia's defense should be limited to information contained in its claim file at the time of its denial of coverage.

## Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## Discussion

I. **Essentia's Motion for Summary Judgment (Doc. 25)**

    A. **Plaintiffs' Breach of Contract Claim**

Plaintiffs argue that there is a dispute of fact as to whether the boat sank as a result of a power interruption to the bilge pump or what Essentia terms as "deterioration" to the hull of the boat. Essentia responds that, even assuming there was a power interruption to the vessel, the sinking of the boat was not fortuitous because the eventual sinking of the boat is foreseeable given its condition.

Marine insurance contracts are governed by admiralty law, to the extent "an established federal rule addresses the issues raised." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1299 (10th Cir. 2001). Otherwise, they are governed by state law. *See id*.

The parties agree that the policy at issue is an "all-risk" policy. "An 'all-risk' policy creates coverage of a type not ordinarily present under other types of insurance, and recovery is allowed for fortuitous losses unless the loss is excluded by a specific policy provision; the effect of such a policy is to broaden coverage and a fortuitous event is one which, to the knowledge of the parties, is dependent upon chance." 10A Couch on Ins. § 148:50; *see also Bank of Oklahoma, N.A. v. Cont'l Cas. Co.*, 849 P.2d 1091, 1092 (Okla. Civ. App. 1992).

Based upon the materials submitted by the parties which comprise the summary judgment record, the Court finds that there is a genuine dispute of material fact with respect to plaintiffs' breach of contract claim. While Essentia claims that deterioration of the hull was a non-fortuitous cause of the boat sinking, this conclusion completely discounts the fact that a power interruption likely caused the bilge pump to cease removing water from the bilge of the boat. Even Sarlund could not explain why his company would not consider the loss of power an accident, and acknowledged that it was a "possible cause" of the sinking of the boat. (Doc. 28-2, at 28-29). [3] In addition, plaintiffs have submitted the expert report of Tom Benton, a former marine claims specialist, who points out that, in his experience, it is normal for wooden hull boats to accumulate water in the bilges, which is ordinarily removed by a bilge pump. (Doc. 28-

---

[3] Remarkably, Essentia admits in its reply brief that, for purposes of its summary judgment motion, "a dispute exists as to whether the boat was deteriorated to such a degree that the deterioration caused the boat to sink…." (Doc. 31, at 5). Essentia argues that this disputed fact does not matter because courts have held that a power interruption to a bilge pump is not fortuitous. Essentia cites two cases for this principle: *Axis Reinsurance Co. v. Resmondo*, 2009 WL 1537903 (M.D. Fla. June 2, 2009) and *Great Lakes Reinsurance (UK) PLC v. Soveral*, 2007 WL 646981 (S.D. Fla. Feb. 27, 2007). However, each of these cases is readily distinguishable. In both instances, the bilge pumps failed because the boats' batteries eventually died from having to power the bilge pumps – a clearly foreseeable circumstance. *See Resmondo*, supra, at *5 ("The vessel's bilge pumps were in the "on" position but Resmondo did not connect the vessel to electrical shore power."); *Soveral*, supra, at *3 ("Once the battery died, the bilge pumps stopped removing the water and the boat sunk. Batteries do not last forever."). Here, as noted, the Blythes' boat was connected to shore power, making the loss of power to the bilge pump far more unexpected and unexplained.

1, at 3). Notably, Benton also tested the bilge pump on the Blythes' boat and determined it to be in "good working order", though he observed "some degree of strainer blockage" which "partially blocked the capability of the pump to discharge a full stream of water." (*Id*.). As such, a jury could readily find that it was the interruption of power to the bilge pump which caused the sinking of the boat, and that the loss of the boat was therefore fortuitous and not covered by a policy exclusion. Essentia's request for summary judgment on plaintiffs' breach of contract claim is therefore denied.

### B. Plaintiffs' Bad Faith Claim

Essentia seeks summary judgment as to plaintiffs' bad faith claim, arguing that the undisputed facts demonstrate that its investigation was reasonable. Plaintiffs respond that Essentia's investigation was anything but reasonable, given the failure to investigate a possible power outage, among other things.

Oklahoma recognizes the tort of bad faith in the insurance context "where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payments of the claim of its insured." *Christian v. American Home Assur. Co*., 577 P.2d 899 (Okla. 1977). The Tenth Circuit has explained the standard for evaluating whether summary judgment on a bad faith claim is appropriate under Oklahoma law:

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. *Id*. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436-37 (10th Cir. 1993) (citing *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla. Civ. App. 1990)). In

making this determination, the Court only considers the "facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation." *Sims v. Travelers Ins. Co*., 16 P.3d 468, 471 (Okla. Civ. App.2000);

The Court finds that, based upon the facts known and knowable to Essentia, there is a genuine question as to whether its investigation of plaintiffs' claim was reasonable. This case presents similar facts to those presented in *Ozment v. Am. Cas. Prop. & Cas. Co*., 12-CV-649-CVE-TLW, 2013 WL 3179522 (N.D. Okla. June 21, 2013). In *Ozment*, the plaintiff owned a large wooden hulled boat which sank while connected to shore power at a marina. *Id*. at *1-2. The insurance company's surveyor found that there had been some deterioration of the sealant in between the wood hull planks that allowed water to seep in, which, without shore power to supply the bilge pump, had caused the vessel to sink. *Id*. at *2. The defendant insurance company refused payment of the claim on the basis that it attributed the sinking of the boat to wear and tear because of the surveyor's finding regarding gradual deterioration of the hull planks. *Id*. The Court denied the insurance company's motion for summary judgment on the plaintiff's bad faith claim primarily on the basis that the company had completely ignored the surveyor's finding that a loss of shore power could have caused the boat to sink. *Id*. at 5. The Court noted, among other things, that the company had not investigated the power outage or viewed maintenance records of the boat, despite its claim that poor maintenance caused it to sink. *Id*.

The facts presented in this case are, in many respects, indistinguishable from those in *Ozment*. Essentia claims that gradual deterioration of the hull caused the Blythes' boat to sink, yet Essentia's investigator and adjustor made absolutely no attempt to view maintenance records for the boat, test the bilge pump, or otherwise determine whether it had been properly maintained

8

prior to its sinking.  In addition, Essentia made no investigation into a possible power outage at the marina, despite its surveyor's finding that "[l]ost power to the vessel and bilge pumps caused accumulating water in the bilge area from age deterioration of the hull." (Doc. 25-5, at 2).  Thus, Essentia completely ignored the first part of Pohlmann's finding in what could appear to be an effort to justify its denial of the claim.  Based upon these facts, a jury could reasonably perceive Essentia's investigation to have been in bad faith.  Hence, Essentia's request for summary judgment as to plaintiffs' bad faith claim is denied.

### C. Plaintiffs' Request for Punitive Damages

Essentia seeks summary judgment with respect to plaintiffs' request for punitive damages, arguing that the Blythes have not put forth sufficient evidence to show reckless disregard or malice.

"Even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, submission of the issue of punitive damages to a jury may be improper." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 614-15 (10th Cir. 1994) (citing *McLaughlin v. National Benefit Life Ins. Co.*, 772 P.2d 383, 385, 387, 389 (Okla. 1988)).  Bad faith on the part of an insurer "gives rise to an action in tort for which consequential, and in a proper case, punitive, damages may be sought." *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977).  However, "punitive damages do not ipso facto follow from every breach of this duty or in every case [in which] a jury may render a verdict for the wronged party." *McLaughlin*, 772 P.2d at 385.  Under Oklahoma law, punitive damages may be awarded on a bad faith claim upon a showing that "[a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured" or acted with malice. 23 *Okla. Stat.* § 9.1.

Based upon the Court's prior findings as to Essentia's investigation of the Blythes' claim, the Court cannot say that the issue of punitive damages should be taken out of the hands of the jury at this time. A reasonable juror could find, based upon the record evidence, that Essentia recklessly disregarded its duty to deal fairly and act in good faith. Accordingly, Essentia's request for summary judgment as to punitive damages is denied.

## II.     Plaintiffs' Motion for Partial Summary Judgment

Plaintiff requests that the Court determine as a matter of law that Essentia's defense in this case be limited to facts which are known or knowable at the time of the decision to deny coverage. Plaintiff requests this determination for the purpose of limiting the "scope of discovery." While plaintiffs' characterization of applicable law is correct, the discovery deadline in this case passed on September 11, 2013. As such, plaintiffs' request has been mooted and is therefore denied.

**IT IS THEREFORE ORDERED** that defendant Essentia Insurance Company's Motion for Summary Judgment, and Brief in Support (Doc. 25) is **denied**.

Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Doc. 20) is also **denied**.

**ORDERED** this 26th day of December, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE